FILED
2008 Oct-16  PM 01:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

JOHN HARRISON,

     Plaintiff,

vs.                                        CASE NO. CV-07-J-815-NE

BENCHMARK ELECTRONICS, INC.,

     Defendant.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment, (doc. 24), and evidence and brief in support of said motion, the plaintiff's evidence and response to said motion (docs. 27 and 28), and the defendant's reply (doc. 31). Having reviewed the motion, the briefs in support of and in opposition to the motion and the evidentiary submissions of the parties, the court finds as follows:

### I.  Procedural History

Plaintiff commenced this action by filing a complaint (doc. 1) asserting that the defendant violated his rights under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213, as amended.  In his complaint, the plaintiff alleged that he is a person with a disability, as that term is defined by the ADA, and that he could perform the essential functions of his job without accommodation. Complaint at ¶¶ 6, 8.  The plaintiff asserted that the defendant treated his medical

condition, epilepsy, as a disqualifying medical condition which precluded him from performing any job for defendant. *Id*. at ¶ 7.   The plaintiff further asserts that after the defendant learned that the plaintiff suffered from epilepsy, the defendant refused to hire the plaintiff as a permanent employee and terminated the plaintiff due to unjustified fears about this condition. *Id*. at ¶¶ 11-12.

In his response to the defendant's motion for summary judgment, the plaintiff asserts that he is not making a disability claim, but actually a claim under the ADA that the defendant violated the ADA by making a pre-offer medical inquiry.[1]

## II.  Factual Background

In the light most favorable to the plaintiff, the facts of this case are as follows:

The plaintiff suffers from epilepsy, for which he is prescribed phenobarbital. Plaintiff depo. at 12-13.   From November 2005 through August 2006, he was employed by the defendant through Aerotek, a temporary work service, as a debug technician, which is a person who troubleshoots electronic boards. *Id*. at 23, 33-35, 62-63, 110.   In May 2006 the plaintiff filled out an application with defendant to become a permanent employee. *Id*. at 38-39, 140; defendant exhibit F.   At the same time, the plaintiff signed a consent form for drug testing.  Defendant exhibit G.  Don

---

[1]In its reply, defendant asserts that the plaintiff has never plead a "medical inquiry" claim. The court agrees.  However, the plaintiff also includes a discussion in his response concerning whether his termination was based on defendant having a perception of disability.

Anthony, a supervisor, told the plaintiff he should go "take the drug test" when a permanent position became available in July 2006.  Plaintiff depo. at 37, 39-40, 68, 96-98, 148; Affidavit of Anthony, ¶¶ 1, 3, 8.  No one ever spoke to the plaintiff about his performance or suggested he had an attitude problem.  Plaintiff depo. at 41, 157.

Lena Williams, who works for defendant in Human Resources, was notified by a July 15, 2006,  report that there was a problem with plaintiff's drug test and asked Anthony to send plaintiff to her office.  Robinson depo. at 110.[2]  The test results were awaiting review by a Medical Review Officer ("MRO").  *Id*. at 105.  Williams called the corporate human resources office, handed the phone to the plaintiff, and left her office.  Williams depo. at 9-10; Robinson depo. at 141.

According to the plaintiff, Anthony told him barbiturates were found in his system.[3]  Plaintiff depo. at 68.  The plaintiff informed him he was prescribed the medication.  *Id*. at 69.  The plaintiff states he went to the office with Anthony, where Anthony called someone in corporate human resources, who asked the plaintiff about his medication.  *Id*.  The plaintiff was asked how long he had this disability, what medication he took, how much of it he took, and how long he had taken that

---

[2]Faye Robinson is the director of Human Resources at the defendant's Huntsville facility.

[3]According to Laura Harrison, the plaintiff's wife, the plaintiff was told he had failed his drug test by Don Anthony, and that Anthony told him to go home and get his prescription bottle. Laura Harrison depo. at 50.

medication. *Id*. at 70-71. The plaintiff testified that having epilepsy has no affect on his ability to work or drive.[4] *Id*. at 101-102.

Within a day or two after plaintiff spoke with the MRO, Williams received clearance to hire the plaintiff. Williams depo. at 11-12, 103; Robinson depo. at 270. Williams reported to Anthony that the plaintiff was cleared to be hired, but did not tell him about the positive drug screen. Williams depo. at 20, 23, 29-31, 42. She had a duty to keep such information confidential. *Id*. at 34. Robinson stated that if Anthony knew the drug test results, someone else must have told him, because her office does not relay such information. Robinson depo. at 146, 165. In fact, her office does not notify a prospective employee that he or she passed the drug test. *Id*. at 167. Rather, the individual is given an offer letter, which according to Robinson, the plaintiff should have received around August 2, 2006. *Id*. at 168.

Williams testified that, at some point after plaintiff was cleared for hire, Anthony made a decision not to hire the plaintiff due to plaintiff's performance. Williams depo. at 55, 61. According to Anthony, plaintiff had previously been moved from one line of products to another because he was not performing well.

---

[4]During the deposition, plaintiff's counsel stated that the plaintiff is claiming solely that he was perceived as having a disability, and that no actual disability was being claimed. Plaintiff depo. at 102. However, the plaintiff also testified that he perceived himself as suffering from a disability, because epilepsy has impacted his ability to join the military, play football and get a CDL. *Id.* at 104-105.

Affidavit of Anthony, ¶ 3.  However, in July 2006, Anthony called Robinson and told her he had several positions he wanted to fill and asked her to get the requisitions for those positions approved.[5]  Robinson depo. at 50-51.  Plaintiff was the only person Anthony identified as being interested in having him fill the position.  *Id*. at 59-60, 69.

After plaintiff completed the drug testing, Anthony was too busy with an audit to move forward with hiring plaintiff.[6]  Affidavit of Anthony, ¶ 14.  In the meantime, another employee, Tim Brown, told Anthony he would make a mistake if he hired plaintiff because the plaintiff could not do his job.  *Id*. at ¶ 15; Anthony depo. at 59-60; Brown depo. at 13-14, 28.  Brown thought the plaintiff lacked the ability to fix boards and had no troubleshooting skills, and relayed these concerns to Anthony.[7]  Brown depo. at 14-15; Anthony depo. at 62.  Brown did not report the plaintiff's perceived incompetency until he heard that the plaintiff was possibly going to be hired as a permanent employee.  Brown depo. at 18, 76.  He testified he never heard anything about plaintiff's drug test.  Brown depo. at 27-28.  Brown blames the

---

[5]These were initially approved, but on August 10, 2006, the approvals were revoked. Robinson depo. at 52.

[6]According to Robinson, the defendant has audits "all the time."  Robinson depo. at 113.

[7]Brown admits he simply did not like the plaintiff at all.  Brown depo. at 65.

plaintiff because boards were not getting completed.[8]  Brown depo. at 158.  He then agrees that no boards were piled up.  Brown depo. at 159.  However, Anthony relied on Tim Brown's opinion.  Anthony depo. at 64-65, 68-75, 81-82, 89-91.  Anthony then told Robinson that a couple of employees were trying to convince him he was making a mistake.  Robinson depo. at 72, 77.

During this time, Anthony was "told numerous people overheard Harrison threaten to put his foot up my rear end if I did not ease off of him."  Affidavit of Anthony, ¶ 18.  Anthony also heard plaintiff threatened to sue if he did not hurry up and bring plaintiff on board.  *Id*. at ¶ 19; Robinson depo. at 212.  Then, Anthony heard that plaintiff refused to repair a "hot" board, which was the "final straw."  Affidavit of Anthony, ¶¶ 21-22; Robinson depo. at 77, 81, 86.  Anthony told Robinson he heard a rumor that the plaintiff said he was going to kick Anthony's rear end.  Robinson depo. at 78.  Anthony also told Robinson that plaintiff was lazy.  *Id.*

Anthony decided not to hire plaintiff and asked Aerotek not to return plaintiff to defendant.  Affidavit of Anthony, ¶ 23; Robinson depo. at 135, 209.  This decision was made after the approval for additional permanent employees was revoked.  Robinson depo. at 136.  Anthony asserts he never knew plaintiff suffered from

---

[8]Brown testified that he had to pick up the slack for the plaintiff's inability to do his job and had to work on weekends to make up for what the plaintiff could not do.  Brown depo. at 144-145.  He then admits he never actually worked a weekend for this reason. Brown depo. at 146-147, 149, 159.

epilepsy and this did not factor into his decision in any way. Affidavit of Anthony, ¶¶ 26-29. After plaintiff was terminated, Anthony sent an email to Lena Williams providing a brief summary of why he thought plaintiff should not be provided permanent employment at defendant. Defendant Exhibit K.

Williams agreed that plaintiff's performance must have been adequate enough for Anthony to have an interest in hiring him. Williams depo. at 70. However, after plaintiff's drug test, she was told that plaintiff's performance was inadequate. *Id.* She stated that defendant's standard practice is that when someone from the temporary work force has been selected for a position and passed a background check and drug test, that person is ordinarily hired. *Id.* at 99, 112-113; *see also* Robinson depo. at 97, 101.

On August 18, 2006, plaintiff was informed by Aerotek that he would not be returning to defendant. Plaintiff depo. at 91. He was told his services were no longer needed and accused of threatening a supervisor on the job. *Id.* at 91, 156. The plaintiff was then terminated from Aerotek the same day. *Id.* at 92. He was told by Aerotek that defendant stated he had a performance and attitude problem. *Id.* at 156. Aerotek also listed as a reason for termination that the plaintiff had threatened to sue defendant if it did not hurry up and hire him. Robinson depo. at 170, 175-176. The

plaintiff asserts defendant failed to hire him as a permanent employee because he suffers from epilepsy.  Plaintiff depo. at 105-106.

Routinely, Aerotek terminates employees who are terminated in their temporary assignments.  McSherry depo. at 40.[9]  McSherry remembered getting a call from Anthony, who said he "overheard that John Harrison was going to shove a foot up his rear if he didn't get brought on as a permanent employee."  *Id*. at 42-43.  She also remembered Anthony said that defendant had issues with the plaintiff's attitude and that defendant wanted to go ahead and terminate the contract.  *Id*. at 45-47.

Brandy Smith, who also worked for defendant, overheard a rumor that the plaintiff had threatened Anthony.  Smith depo. at 5-6, 38.  Tim Brown also heard the rumor concerning the threat, and added that it was the result of Anthony having said something to the plaintiff about having football paraphernalia up on a bench.  Brown depo. at 151.

There was also a rumor that the plaintiff was angry because he was not hired as a permanent employee.  Smith depo. at 10.  This occurred the day before the plaintiff was fired.  *Id*. at 14.  Smith further testified that she heard a rumor that the plaintiff had epilepsy, failed the drug test because he did not tell defendant he was on

---

[9]At the time in question, Heather McSherry was a recruiter for Aerotek.  McSherry depo. at 8.

medication and that the plaintiff thought that was why he was fired, but the real reason was that he threatened Anthony.  *Id*. at 43.  Plaintiff's wife, Laura Harrison, testified that she overheard Annette Smith telling her daughter Brandy Smith that the plaintiff was fired because he had epilepsy and Annette Smith stated that defendant was trying to get away with it.  Laura Harrison depo. at 44.  She later overheard Annette Smith saying that if the plaintiff's claim ended up in court, defendant would have to settle.  *Id*. at 48.

### III.  Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23.  The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of  genuine issues of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed.R.Civ.Pro. 56(e).  In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.Pro. 56(e); *Matsushita*, 475 U.S. at 587.

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case .... A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir.2000)(quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir.1995)).

## IV.  Discussion

## A.  Medical Inquiry Claim

The ADA provides that no covered employer shall discriminate against a "qualified individual with a disability because of the disability of such individual with regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  The ADA prohibits employers from inquiring into an individual's medical history or conducting a medical examination as a pre-condition to an offer of employment. 42 U.S.C. § 12112(d)(2)(A).

In his complaint, the plaintiff alleged:

6.  Plaintiff "is a person with a disability because defendant perceived that plaintiff's epilepsy substantially limited plaintiff's ability to perform major life activities..."

7.  Defendant treated plaintiff's epilepsy as a disqualifying medical condition that precluded him from performing any job at its plant....

8.  Plaintiff is a qualified person with a disability in that without reasonable accommodation plaintiff could perform the essential functions of his ... job ....

10.  In July 2006, defendant learned plaintiff had epilepsy after questioning him following a preemployment drug test that showed the presence of the medication that controls plaintiff's seizures.

11

11.   Defendant refused to hire plaintiff because of unjustified fears related to plaintiff's epilepsy, and in August 2006, terminated plaintiff's employment because of these same fears, offering at times different pretextual reasons....

12.   Defendant violated the ADA by forcing plaintiff to answer prohibited medical questions prior to making an offer of employment to him, by refusing to hire him based on a perceived disability, and by terminating him based on a perceived disability.

In his written charge to the EEOC, the plaintiff asserted:

I began my employment with the above-named employer through a temporary service on November 14, 2005.  I was employed as a debug technician.  After nine months of employment I was offered a permanent position.  I took a drug test on July 12, 2006.  The test came back positive.  When my supervisor advised me of the test results, I informed him of the medication I was taking for my disability.  I was instructed to call human resource and tell them why I was taking the medication, give them the prescription number, the pharmacy and the dosage.  I continued working until August 18, 2006, after the employers audit, before the employer informed the agency that my services were no longer needed.

I believe I have been discriminated against because of my disability in violation of the American With Disability Act of 1990.  The employer continues advertising for the position that I previously worked.  It was only after the employer became aware of my disability that my services were no longer needed.

In his response to the defendant's motion for summary judgment, the plaintiff asserts for the first time that a claim that the defendant violated the ADA by "inquiring about Harrison's epilepsy before offering him a job and then refusing to hire Harrison and terminating his employment based on the information obtained." Plaintiff's response at 14.

12

As recognized by the plaintiff, the Eleventh Circuit has not explicitly stated that a private right of action exists under 42 U.S.C. § 12112(d)(2)(A).  "We have not decided and do not decide now whether a plaintiff has a private right of action under 42 U.S.C. § 12112(d)(2)." *Bennett v. Dominguez,*  196 Fed.Appx. 785, 793, 2006 WL 2503549, 6 (11th Cir.2006).  42 U.S.C. § 12112(d)(2) states:

> (d) Medical examinations and inquiries.
>
> (2) Preemployment
>
> (A) Prohibited examination or inquiry
> Except as provided in paragraph (3), a covered entity shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability.
>
> (B) Acceptable inquiry
> A covered entity may make preemployment inquiries into the ability of an applicant to perform job-related functions.

42 U.S.C. § 12112(d)(2)(A)-(B).

Relatively few courts have addressed either this ADA prohibition or the related subsections involving preemployment inquiries and employment entrance examinations.[10] *See* 42 U.S.C. § 12112(d)(2)-(3); *Conroy v. New York State Dept. of*

---

[10]The plaintiff argues that he does not have to establish a disability to have the protection of this section.  Other circuit courts have found that a plaintiff need not prove a disability in order to challenge a medical examination or inquiry under 42 U.S.C. § 12112(d).  *See Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1229 (10th Cir.1997); *Fredenburg v. Contra Costa County Dep't of Health Servs.*, 172 F.3d 1176, 1182 (9th Cir.1999); *Cossette v. Minnesota Power & Light*, 188 F.3d 964, 969-70 (8th Cir.1999); see also *Murdock v. Washington*, 193 F.3d

*Correctional Services,* 333 F.3d 88, 93 (2nd Cir.2003).  However, the ADA also

allows for pre-employment drug testing, as follows:

> (d) Drug testing
> (1) In general
> For purposes of this subchapter, a test to determine the illegal use of
> drugs shall not be considered a medical examination.

42 U.S.C.A. § 12114

Considering the foregoing, the court does not have to determine at this time

whether or not the Eleventh Circuit Court of Appeals has or will recognize a private

right of action under the ADA to prohibit pre-employment medical inquiries.

Pursuant to the ADA, an employer may test potential employees to determine the

illegal use of drugs, as was done here.  Given that the plaintiff here tested positive for

barbituates, the employer inquired as to whether the plaintiff had a legitimate use for

such medication.

Even assuming the plaintiff had properly pleaded this as a cause of action, the

court cannot stretch this factual situation into a "medical examination" as the plaintiff

attempts to do.  *See* plaintiff's response at 16 (arguing that "by sitting in with

---

510, 512 (7th Cir.1999) (noting the same in dicta).

     As the defendant does not contest that 42 U.S.C. § 12112(d) applies to those without
disabilities as well as individuals with disabilities, the court merely assumes, without deciding,
that plaintiff's assertion that he does not have an actual disability is not a bar to a claim under
this section.

Harrison as Harrison was questioned by the MRO, it was no different than Anthony personally asking Harrison the questions."  Plaintiff does not assert that he was on speakerphone, or that Anthony had some other means of hearing questions asked of the plaintiff).

Not all medical inquiries are prohibited under the ADA.  "An employer is entitled only to the information necessary to determine whether the employee can do the essential functions of the job or work without posing a direct threat."  *Farmiloe v. Ford Motor Co.,* 277 F.Supp.2d 778, 783 (N.D.Ohio.2002) (quoting EEOC Enforcement Guidance: Disability-Related Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act, Question 13 (July 27, 2000)).

Even taking the plaintiff's version of events as true, namely that Anthony came to him regarding the drug test results, the plaintiff can show only that Anthony told him he had to speak to the Medical Review Officer and overheard plaintiff's end of that conversation.  Plaintiff's argument that "it is well-established that employers are prohibited from using a drug testing program to obtain information concerning prescription medications...." is not supported by the sole case cited by plaintiff for this proposition.  Rather, *Roe v. Cheyenne Mounting Conference Resort, Inc.*, concerned a policy of the defendant in that case that required employees to report "all drugs present within their body system [sic]" and further mandated that "prescribed

15

drugs may be used only to the extent that they have been reported and approved by

an employee supervisor...." *Roe*, 124 F.3d 1221, 1226 (10th Cir.1997).  The sole issue

before that court was whether injunctive relief was an appropriate remedy to prevent

enforcement of the policy in question.  Such a policy does not exist in the facts before

this court.     Rather, the issue here is whether a prohibited medical inquiry was made

into the plaintiff's condition.  Plaintiff's argument that there was such an inquiry is

contradicted by the facts of the case, as well as the ADA itself, which plainly states,

"[f]or purposes of this subchapter, a test to determine the illegal use of drugs shall not

be considered a medical examination."  42 U.S.C.A. § 12114.

Because the court is unable to find that defendant made a prohibited medical

inquiry, the court is of the opinion that the plaintiff cannot establish a prima facie case

for this claim.[11]  The defendant has established a valid reason for its inquiry, namely

---

[11]Although argued by the plaintiff, none of the cases the court has found concerning medical inquiries in violation of the ADA apply the burden shifting *McDonnell Douglas* framework.  *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 561 (5th Cir.1998), held that "in order for a non-disabled person to pursue a claim under this statute, 'damages liability under § 1211(d)(2)(A) must be based on something more than a mere violation of that provision. There must be some cognizable injury in fact of which the violation is a legal and proximate cause for damages to arise from a single violation.'" Armstrong, 141 F.3d at 561.

In all the other cases this court has reviewed, either the court did not reach the issue, or found no injury from any such inquiry.  *See e.g., Grimsley v. Mashalls of MA, Inc.*, 2008 WL 2435581 (11th Cir.2008)(court did not reach issue because of plaintiff's failure to properly plead medical inquiry claim in his complaint); *Cash v. Smith*, 231 F.3d 1301, 1307-1308 (11th Cir.2000) (finding statute did not apply to facts as alleged); *Haynes v. City of Montgomery, Ala.*, 2008 WL 695023 (M.D.Ala.2008)(finding, given nature of job, a fitness for duty examination was permissible under the ADA); *Mickens v. Polk County School Bd.*, 430 F.Supp.2d 1265, 1278-1279 (M.D.Fl.2006)(same); *Murray v. John D. Archbold Memorial Hosp., Inc.*, 50

plaintiff's positive test for barbiturates in his pre-employment drug test.  The plaintiff

does not assert that the drug testing itself was a violation of the plaintiff's rights, nor

does he suggest what else the defendant should have done with the information that

the plaintiff tested positive for the substance in question.[12]  Even if the plaintiff had

properly pleaded a cause of action for violation of 42 U.S.C. § 12112(d)(2), the court

is of the opinion that the defendant's actions did not violate this section.

### B. Perceived Disability

The ADA provides that no covered employer shall discriminate against a

"qualified individual with a disability because of the disability of such individual with

regard to job application procedures, the hiring, advancement, or discharge of

---

F.Supp.2d 1368, 1379 (M.D.Ga.1999)("the Court need not, and does not, decide whether
Plaintiffs have standing under the ADA to recover for an alleged violation of § 12112(d)(2);
ultimately, the Court holds that Defendants' method of enforcing the weight policy does not
violate the ADA because Defendants did not inquire about a disability."); *Strong v. Paulson,* 249
Fed.Appx. 470, 473, (7th Cir.2007) ("[t]o prove a violation under 42 U.S.C. § 12112(d)(2), a
plaintiff must demonstrate that he suffered some tangible injury-in-fact ....The injury here is the
OCC's failure to hire Strong. We have concluded, however, that the OCC's failure to hire Strong
was not discriminatory...."); *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 676 (1st Cir.1995)
("We conclude that an employer may request that an applicant provide medical certification from
doctors of ability to perform so long as the inquiry does not otherwise run afoul of §
12112(d)(2)(A)."); *Douris v. Bucks County,*  145 Fed.Appx. 735, 737, 2005 WL 1994949, 1 (3rd
Cir.2005), citing *Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 520 (3rd Cir.2001) (noting that
in the absence of injury, no claim can lie for a violation of § 12112(d)).

[12]Logically, if an employer could not follow up with a prospective employee concerning
the results of a drug test, either no one who ever tested positive for any substance, prescribed or
otherwise, would receive job offers, or the provision of the ADA allowing for pre-employment
drug screening would be rendered meaningless because employers would not be allowed to make
follow-up inquiries.

employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines disability as: (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; or (B) a record of such an impairment or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2); *Pritchard v. Southern Co. Services,* 92 F.3d 1130, 1132 (11th Cir.), *amended on reh'g,* 102 F.3d 1118 (11th Cir.1996).[13] The plaintiff here asserts he was "regarded as" suffering from a disability.

In order to establish a prima facie case of disability discrimination, plaintiff must establish that he (1) has a disability; (2) he is a qualified individual "which is to say, able to perform the essential functions of the employment position that he holds ... with or without reasonable accommodations; and (3) was subjected to unlawful discrimination because of h[is] disability. *Lowe v. Alabama Power Co.*, 244 F.3d

---

[13]"Regarded as" having a disability is further defined as follows:
(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
(3) Has none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

*D'Angelo v. ConAgra Foods, Inc.*,  422 F.3d 1220, 1228 (11th Cir.2005); citing 29 C.F.R. § 1630.2( 1 ).

1305, 1307 (11th Cir.2001); *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir.2000); *Reed v. Heil Co.*, 206 F.3d 1055, 1061 (11th Cir.2000); citing *Hillburn v. Murata Electronics North America, Inc*., 181 F.3d 1220, 1226 (11th Cir.1999);  *See also  Gordon v. E.L. Hamm & Assocs., Inc*., 100 F.3d 907, 910 (11th  Cir.1996);  *Wood v. Green*, 323 F.3d 1309, 1312 (11th Cir.), cert. denied, 540 U.S. 982, 124 S.Ct. 467, 157 L.Ed.2d 373 (2003) (recognizing same standard for perception of disability).  Thus, "[a]n employer runs afoul of the ADA when it makes an employment decision based on a physical or mental impairment, real or imagined, that is regarded as substantially limiting a major life activity." *D'Angelo v. ConAgra Foods, Inc*.,  422 F.3d 1220, 1228 (11th Cir.2005)(quoting *Sutton*, 527 U.S. at 490, 119 S.Ct. 2139).

Once a plaintiff establishes a prima facie case of discrimination, the defendant must articulate a legitimate, non-discriminatory reason for the action. *Wascura v. City of South Miami,* 257 F.3d 1238, 1242 -1243 (11th Cir.2001), citing *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir.2000) (en banc). Assuming solely for purposes of this opinion that the plaintiff could establish a prima facie case, the defendant set forth a legitimate, non-discriminatory reason for the failure to hire the plaintiff, namely that between the date of the drug test and the date of a job offer being made, Anthony learned the plaintiff's performance was sub-par, he heard rumors that

the plaintiff was making threats against him, and then authorization for the job was withdrawn.

The defendant has provided the court with a legitimate, non-discriminatory reason for its decision to not hire plaintiff and to terminate plaintiff's employment. Therefore, the burden shifts back to the plaintiff to "come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Wascura*, 257 F.3d at 1243 (citations omitted). The defendant asserts that the plaintiff cannot show that the defendant's reasons for its employment actions were pretextual.[14]

The plaintiff fails to rebut defendant's claim that Anthony believed the plaintiff to be unable to perform his job, based on what Tim Brown told Anthony. Whether or not Tim Brown was truthful in relaying plaintiff's job skills to Anthony is not at issue in this case. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991) ("That the employee did not in fact engage in misconduct reported to the employer is irrelevant to the question whether the employer believed the employee had done wrong."). *See also Chapman v. AI Transport*, 229 F.3d 1012, 1048 (11th Cir.2000)

---

[14]Even if the plaintiff could, there was no available position after August 10, 2006, as the employer withdrew the authorization to permanently fill the position in question. As such, no one was ever placed in the job in question. The plaintiff wholly fails to address how the lack of any open position as of August 16, 2006, is pretextual.

(stating inquiry is limited to whether the decision maker believed the allegations against the plaintiff, and if so, whether that belief was the reason behind plaintiff's discharge). The plaintiff here has presented no evidence that Anthony did not believe Brown's allegations against the plaintiff and instead used them as a pretext for discrimination. The plaintiff having failed to produce any evidence on the genuine issue of material fact, the court must grant the defendant's motion for summary judgment.

## IV. Conclusion

This court having considered all of the evidence before it finds that the defendant's motion for summary judgment (doc. 24) is due to be granted on all counts of the complaint.

It is therefore **ORDERED** by the court that defendant's motion be and hereby is **GRANTED** on all counts of plaintiff's complaint, the court finding no genuine issues of material fact remain and that the defendant is entitled to judgment in its favor as a matter of law. Judgment shall be entered in favor of the defendant and against the plaintiff by separate order.

**DONE** and **ORDERED** this the 16th day of October, 2008.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE